

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2005

# USA v. Kleinpaste

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2678

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Kleinpaste" (2005). *2005 Decisions*. Paper 1471.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1471

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-2678

———

UNITED STATES OF AMERICA

Appellee

v.

KARL F. KLEINPASTE

Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 02-cr-00065)
District Judge: Honorable Gary Lancaster

———

Argued: July 2, 2004

Before: AMBRO, ALDISERT and STAPLETON, Circuit Judges

(Filed: March 7, 2005)

LISA B. FREELAND (Argued)
Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
Attorney for Appellant

LAURA S. IRWIN (Argued)
Assistant United States Attorney
700 Grant Street Suite 400
Pittsburgh, PA 15219
Attorney for Appellee United States of America

OPINION OF THE COURT
——

ALDISERT, Circuit Judge.

Because we write only for the parties who are familiar with the facts and proceedings below, our discussion will be limited.

I.

We conclude that Appellant Karl Kleinpaste did not sustain a violation of his Sixth Amendment rights because he knowingly, voluntarily and intelligently waived his right to counsel at his: arraignment; pretrial proceedings; bond revocation hearing; and trial. Because the issue we will decide is "whether there was a knowing and intelligent waiver, the legal conclusion as to whether the record so indicates is subject to plenary review." United States v. Peppers, 302 F.3d 120, 127 (3d Cir. 2002) (citations omitted). The underlying facts are reviewable only for clear error. Id.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The Sixth

Amendment also guarantees the right of self-representation. Faretta v. California, 422 U.S. 806, 814 (1975). As such, the Constitution "embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel." Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

In Peppers, we noted this tension and explained the responsibility of the district court to resolve it by: (1) determining whether the defendant is asserting his desire to proceed pro se clearly and unequivocally; (2) conducting a thorough inquiry to satisfy itself that the defendant understands "the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved;" and (3) assuring itself that the defendant is competent to stand trial. 302 F.3d at 132 (citations and quotations omitted). If, after consideration of these factors, a defendant nonetheless insists on proceeding pro se, the court "must permit him to do so." Id. at 133. In satisfying this inquiry, the court need not follow a certain script. Iowa v. Tovar, 541 U.S. 77, 124 S. Ct 1379, 1387 (2004).

A complete review of the arraignment colloquy, however, reveals that Kleinpaste repeatedly and clearly: (1) asserted his right to self-representation, making this assertion on at least five occasions; (2) waived his right to appointed counsel; and (3) reserved his right to seek representation of his own choosing at some later point, if he so desired.

The pre-trial the testimony before the court, reviewed in its entirety, reveals that

3

both the court and Kleinpaste understood that he had clearly asserted his right to proceed pro se at the arraignment, that his pro se status had not changed and that the pretrial proceedings functioned as a fact-finding mission to determine whether Kleinpaste intended to obtain counsel. The court discovered that although Kleinpaste was not waiving his right to counsel, in the two full months that had passed since the arraignment he had done little to retain counsel. Kleinpaste explained that he had not yet begun the search for a lawyer as he had "been concentrating on other matters because [he had] perceived other matters that need [sic] to be dealt with more importantly." Indeed, he filed twenty motions during this time period. Both his explanation and actions indicated that Kleinpaste was continuing to appear pro se, see United States v. Stubbs, 281 F.3d 109, 117 (3d Cir. 2002), and although he intended to search for counsel, that search was not a priority. Because Kleinpaste's status did not change from the arraignment, in which he asserted his right to appear pro se, no need existed for the court to take any step other than to require Kleinpaste to move forward on his stated intention of retaining an attorney. See Tovar, 124 S Ct. at 1387. Moreover, the court had statutory authority to amend the conditions of release, see 18 U.S.C. § 3142 (c)(B)(3), and to impose "the least restrictive further condition . . . that such judicial officer determines will reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(c)(B).

Kleinpaste argues that, at his bond revocation hearing, the court failed to adhere to two of the considerations outlined in Peppers: (1) he never clearly and unequivocally

4

requested the right to proceed pro se; and (2) the court did not conduct the necessary

"penetrating and comprehensive examination" required to ensure proper waiver.

Examination of the entire colloquy at this hearing, however, reveals that, in light of the

facts in this case, the court conducted a constitutionally firm inquiry. Kleinpaste

unequivocally told the court: "I, I believe I understand that, but I, I would rather go about

the matter myself and find it on my own."  Moreover, the court appointed standby

counsel to assist Kleinpaste at his discretion.

He contends that, in the colloquy at trial, he did not clearly assert his right to

proceed pro se and thus the court failed to comply with the first consideration set forth in

Peppers. He then raises seven areas of alleged error with regard to the second condition

articulated in Peppers, that the court must assure itself that the defendant possesses a

complete understanding of the consequences. A review of the colloquy reveals no

violation of the Sixth Amendment. The court ensured that Kleinpaste: (1) understood the

purpose of the hearing; (2) was competent to conduct the colloquy; (3) knew that, to his

detriment, he did not possess the skills of an attorney to handle his own representation;

(4) understood the nature of the charges against him; (5) knew he would have to operate

in conformity with the Federal Rules of Evidence and Criminal Procedure; and (6) knew

the possible penalties if convicted. The court ascertained that Kleinpaste had been

reading and studying the law. See Government of Virgin Islands v. Charles, 72 F.3d 401,

406-410 (3d Cir. 1995). Although the court did not inquire explicitly at the trial colloquy

5

whether Kleinpaste believed that counsel could adequately represent him or whether he understood that proceeding pro se could impede his defense against the charges, neither the Supreme Court nor this Court requires a script for waiver colloquies, and instead rests the analysis on the particular facts of the case. Tovar, 124 S. Ct at 1387; United States v.Thomas, 357 F.3d 357, 364 (3d Cir. 2004).

Here, Kleinpaste had informed the court that he sought a lay-person to represent him because he distrusted the judicial system, and hence the court had no need to inquire as to why Kleinpaste rejected appointment of counsel. Moreover, notwithstanding Kleinpaste's resistance, the court continued the appointment of standby counsel. Further, it is significant that the same magistrate judge conducted Kleinpaste's arraignment and bond revocation hearing and the same district judge conducted Kleinpaste's pretrial and trial colloquies, and presided at trial.

We therefore conclude that  Kleinpaste knowingly, voluntarily and intelligently waived his right to counsel at his: arraignment; pretrial proceedings; bond revocation hearing; and trial, and therefore he did not sustain a violation of his Sixth Amendment right to counsel.

## II.

The prosecutor's cross-examination of Kleinpaste and closing argument did not constitute prosecutorial misconduct. We review the issue of prosecutorial misconduct for an abuse of discretion. United States v. Retos, 25 F.3d 1220, 1224 (3d Cir. 1994). When

a defendant fails to object to remarks at trial, this court reviews for plain error. United

States v. Irizarry, 341 F.3d 273, 306 (3d Cir. 2003)

Kleinpaste acknowledged during his opening statement that the only issue before

the jury was whether he had a good faith belief that he was not required to pay taxes, as

set forth in Cheek v. United States, 498 U.S. 192 (1991). In Cheek, the Court explained

that "a defendant's claim . . . that because of a misunderstanding of the law, he had a

good-faith belief that he was not violating any of the provisions of the tax laws" is a

valid defense to a charge of violating the tax laws because, if believed by the jury, it

vitiates the willfulness element. 498 U.S. at 202. Kleinpaste argues that the cross-

examination of him "improperly undermin[ed]" his "good faith defense" and that the

prosecutor's actions amounted to misconduct so severe as to warrant reversal of his

conviction. We disagree.

Here, the prosecutor asked Kleinpaste 330 questions on cross-examination, of

which Kleinpaste selects eleven as evidence of the prosecutor's hostility. Kleinpaste did

not object to any of these eleven questions and, therefore, this Court reviews them only

for plain error. Under this standard, Kleinpaste must demonstrate that the alleged

"prosecutorial misconduct [resulted in] an egregious error or manifest miscarriage of

justice." Id. (quotation omitted). A conviction must be affirmed if "it is highly probable

that the error did not contribute to the judgment." Government of the Virgin Islands v.

Toto, 529 F.2d 278, 284 (3d Cir. 1976). This requires the court to possess "a sure

7

conviction that the error did not prejudice the defendant." United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (citation and internal quotation omitted).

We have considered all the specified instances and conclude that only one merits discussion. Kleinpaste contends that the prosecutor "misrepresented" the law when he read an excerpt from the dissenting opinion in Cheek when cross-examining him. Prior to reading from Cheek, Kleinpaste acknowledged that he had cited Cheek in his own briefs and had come across it in his research "years ago." The prosecutor then asked:

> Question:  I'm reading from the bottom of Page 209 to the top of the next page; you tell me if I'm reading correctly "That being so, it is incomprehensible to me how in this day, more than seventy years after the institution of our present Federal income tax system, with the passage of Income Tax Act 1913, 38 Stat 166, any taxpayer of competent mentality can assert as his defense to charges of statutory wilfulness the proposition that the wage he received from his income was not income, irrespective of a consult that says otherwise and advises the gullible to resist income tax collections."

Kleinpaste then admitted that he previously had read Cheek.

Although it was ill-advised that the prosecutor chose to read an excerpt from the dissent, neither the question nor the passage suggests that the prosecutor read the "law of the land" as Kleinpaste contends. The government maintains that the question was aimed at informing the jury that, in a Supreme Court case that Kleinpaste had discovered early on, at least one Justice expressed the sentiment that only the gullible could fall for theories of non-tax liability. Nonetheless, any possibility of misunderstanding on the jury's part was cleared up by Kleinpaste on redirect examination:

8

Q: [o]n the citation to <u>Cheek</u> versus the United States, in which it was observed – a question about how any taxpayer of competent mentality can assert a certain defense, is that the holding in the case?

A: No, it is not; it was the dissent.

Again during his closing argument, Kleinpaste reminded the jury that the portion of <u>Cheek</u> read by the prosecutor was not the holding of the case. We therefore conclude that no reversible error took place in the prosecutor's questioning about <u>Cheek</u>.

III.

The court properly limited lay witness testimony on perceptions of Kleinpaste's sincerity in his beliefs of tax code requirements and properly instructed the jury on assessment of character evidence. Unpreserved error is reviewed only for plain error. <u>United States v. Gordon</u>, 290 F.3d 539, 542-543 (3d Cir. 2002).

Rule 701 of the Federal Rules of Evidence provides that lay opinion is admissible so long as it is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." <u>See</u> <u>United States v. Polishan</u>, 336 F.3d 234, 242 (3d Cir. 2003). Here, the opinions of lay witnesses on how sincerely Kleinpaste held his views would not have aided the jury or clarified an issue that the jury otherwise would not have been competent to understand. <u>See</u> <u>United States v. Hauert</u>, 40 F.3d 197, 200 (7th Cir. 1994). The jury could understand, and assess, Kleinpaste's testimony on this central issue. For this reason, the court properly excluded lay opinion testimony as irrelevant. How an individual witness may have gauged the depth of Kleinpaste's conviction has no bearing

9

on the ultimate issue before the jury: whether it found that Kleinpaste's beliefs satisfied the good faith requirement set forth in Cheek. The court therefore was well within its discretion in refusing to allow the testimony. See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 525 (3d Cir. 2003).

Kleinpaste contends that the court erred when it failed to instruct the jury that evidence of "his good character alone could raise a doubt about his guilt." Kleinpaste recognizes that his lack of request for a contemporaneous objection to the instructions necessitates that this court review only for plain error. See Gordon, 290 F.3d at 542-543. In United States v. Spangler, 838 F.2d 85 (3d Cir. 1988), this court held that "so long as an instruction . . . is given, which calls the jury's attention to its duty to take character evidence into account with all of the other evidence in deciding whether the government has proved its charge beyond a reasonable doubt, the omission of the express 'standing alone' language . . . is not an abuse of the discretion vested in the trial court to choose the wording of the character evidence charge." Id. at 87. As a matter of law, Kleinpaste was not entitled to any express language in the instruction, and this court must consider the instructions in their entirety to determine their adequacy. Id.

Here, the court informed the jury more than once to consider all of the evidence. The court required the jurors to fulfill their duty as "sole judges of the credibility of the witnesses and the weight their testimony serves" and instructed the jury to consider the "character of the testimony given." Based on the entirety of the evidence before the jury,

no plain error occurred.

IV.

Appellant challenges his sentence under <u>United States v. Booker</u>, 543 U.S. - -, 125 S. Ct. 738 (2005). Having determined that the sentencing issues appellant raises are best determined by the district court in the first instance, we will vacate the sentence and remand for re-sentencing in accordance with <u>Booker</u>.

We will affirm the judgment of conviction, vacate the sentence and remand to the district court for re-sentencing.

*UNITED STATES OF AMERICA V. KARL F. KLEINPASTE – NO. 03-2678*

<u>STAPLETON</u>, Circuit Judge, dissenting:

I would reverse the judgment of the District Court and remand for a new trial for two reasons. First, under the teachings of *United States v. Stubbs*, 281 F.3d 109 (3d Cir. 2002), appellant's waiver of counsel was not knowingly and intelligently made. Second, it was prejudicial error to permit the government to read to the jury from Justice Blackmun's dissenting opinion in *Cheeks v. United States*, 498 U.S. 192 (1991).

11